# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARIGNA TECHNOLOGY LIMITED., | ) | |
| An Irish Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 23-1441-GBW |
| | ) | |
| LONGFORD CAPITAL FUND, III, LP, | ) | ▬▬▬▬▬▬▬▬▬]¹ |
| A Delaware Corporation, | ) | [PUBLIC VERSION] |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF ARIGNA TECHNOLOGY LIMITED'S COMBINED ANSWERING BRIEF IN OPPOSITION TO DEFENDANT LONGFORD CAPITAL FUND, III, LP'S MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION AND OPENING BREIF IN SUPPORT OF PLAINTIFF ARIGNA TECHNOLOGY LIMITED'S** <u>**MOTION TO ENJOIN ARBITRATION**</u>

Dated:  January 23, 2024

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff Arigna Technology Limited*

---

¹ Pursuant to authority granted by D.I. 14.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..ii

NATURE AND STAGE OF PROCEEDINGS………………………………………………1

SUMMART OF ARGUMENT……………………………………………………………1

STATEMENT OF FACTS…………………………………………………………...2

    A.    The Parties and Relevant Non-Parties.................................................................. 2

    B.    The Engagement Agreement ................................................................................. 2

    C.    The August 25, 2020 Funding Agreement ........................................................... 4

    D.    The Settlement....................................................................................................... 5

    E.    Response to Longford's Statement of Facts.......................................................... 6

ARGUMENT……………………………………………………………………..7

I.    Legal Standard ................................................................................................................. 7

II.    Arigna and Longford Do Not Have a Valid Agreement to Arbitrate ................................8

III.    Longford Cannot Enforce the Arbitration Clauses Contained in the Engagement Agreement or the Funding Agreement Against Arigna....................................................11

    A.    Susman Did Not Execute The Funding Agreement As Arigna's Agent............. 11

    B.    Estoppel Does Not Bind Arigna to The Funding Agreement ............................. 14

    C.    Longford is Not a Third-Party Beneficiary of the Engagement Agreement ....... 16

IV.    Equitable Factors Under Rule 65 Justify Enjoining The Arbitration. ..............................18

    A.    Arigna Is Likely to Succeed on The Merits ....................................................... 18

    B.    Arigna Will Suffer Irreparable Harm ................................................................. 18

    C.    The Balance of Equities and Public Interest Favor Granting an Injunction........ 19

CONCLUSION………………………………………………………………………..20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.D. v. Credit One Bank, N.A.*,
    885 F.3d 1054 (7th Cir. 2018) ...............................................................................14

*In re Abeinsa Holding, Inc.*,
    C.A. No. 16-10790 (KJC), 2016 WL 5867039 (Bankr. D. Del. Oct. 6, 2016) ......................18

*AffiniPay, LLC v. West*,
    No. CV 2021-0549-LWW, 2021 WL 4262225 (Del. Ch. Sept. 17, 2021) ...........................19

*American Life Ins. Co. v. Parra*,
    25 F. Supp. 2d 467 (D. Del. 1998)............................................................................18

*Barraia v. Donoghue*,
    49 Ill. App. 3d 280, 364 N.E.2d 952 (1977) ...........................................................14

*Bestway (USA), Inc. v. Sgromo*,
    C.A. No. 17-cv-00205-HSG, 2018 WL 4677681 (N.D. Cal. Sept. 27, 2018) ......................20

*Bradley v. Pittsburgh Bd. of Educ.*,
    910 F.2d 1172 (3d Cir. 1990).................................................................................18

*Bridas S.A.P.I.C. v. Gov't. of Turkmenistan*,
    345 F.3d 347 (5th Cir. 2003) .................................................................11, 12, 17

*BuzzFeed, Inc. v. Anderson*,
    C.A. No. 2022-0357-MTZ, 2022 WL 15627216 (Del. Ch. Oct. 28, 2022) ...........................18

*Castroville Airport, Inc. v. City of Castroville*,
    974 S.W. 2d 207 (Tex. App. 1998).........................................................................10

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
    584 F.3d 513 (3d Cir. 2009).....................................................................................7

*Chi. School Reform Bd. of Trs. v. Diversified Pharm. Servs., Inc.*,
    40 F. Supp. 2d 987 (N.D. Ill. 1999) .......................................................................19

*Com. Union Assurance Co. v. Winstead*,
    213 S.W. 955 (Tex. Civ. App. 1919).......................................................................14

*Commercializadora Portimex S.A. de C.V. v. Zen-Noh Grain Corp.*,
    373 F. Supp. 2d 645 (E.D. La. 2005)......................................................................20

*Dearborn Maple Venture, LLC v. SCI Illinois Servs., Inc.*,
   2012 IL App (1st) 103513, 968 N.E.2d 1222, *as modified on denial of reh'g*
   (May 29, 2012).......................................................................................................9, 10

*Disney Enters., Inc. v. Esprit Fin., Inc.*,
   981 S.W.2d 25 (Tex. App. 1998)............................................................................13

*Dolenz v. A--- B---*,
   742 S.W.2d 82 (Tex. App. 1987).............................................................................16

*Dorco Co. Ltd. v. Gillette Co. LLC*,
   18-1306-LPS-CJB, 2019 WL 1874466 (D. Del. Mar. 18, 2019)..............................7

*East Tex. Med. Ctr. Regional Healthcare Sys. V. Slack*,
   816 F. Supp. 2d 719 (E.D. Tex. 2013) ...............................................................11, 12

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002)..................................................................................................8

*First Bank v. Brumitt*,
   519 S.W.3d 95 (Tex. 2017)....................................................................................16

*Floral Trade Council of Davis, Ca. v. United States*,
   12 C.I.T. 603 (Ct. Int'l Trade 1988) ......................................................................20

*Flowserve Corp. v. Burns Int'l Servs. Corp.*,
   423 F. Supp. 2d 433 (D. Del. 2006).......................................................................19

*Gray & Co. Realtors, Inc. v. Atl. Housing Fdn., Inc.*,
   228 S.W. 3d 431 ....................................................................................................10

*Huckabav v. Ref-Chem, L.P.*,
   892 F.3d 686 (5th Cir. 2018) ...................................................................................8

*John Hancock Mut. Life Ins. Co. v. Olick*,
   151 F.3d 132 (3d Cir. 1998)......................................................................................7

*Lincoln Cardinal Partners v. Barrick*,
   218 Ill. App. 3d 473, 578 N.E.2d 316 (1991) ........................................................14

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*,
   995 S.W.2d 647 (Tex. 1999)...................................................................................17

*Moran v. Ceiling Fans Direct, Inc.*,
   239 F. App'x. 931 (5th Cir. 2007) ............................................................................7

*Nelson v. Watch House Int'l, L.L.C.*,
   815 F.3d 190 (5th Cir. 2016) ....................................................................................7

iii

*Omnium Lyonnais D'Etancheite et Revetement Asphalte v. Dow Chemical Co.*,
    441 F. Supp. 1385 (C.D. Cal. 1977) ........................................................................20

*PaineWebber Inc. v. Hartmann*,
    921 F.2d 507 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean
    Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ..........................................................7, 18

*Qwest Commc'ns Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    821 A.2d 323 (Del. Ch. 2002) ................................................................................18

*Raymond James Fin. Servs., Inc. v. Peveto*,
    No. 09-12-00472-CV, 2013 WL 1279404 (Tex. App. Mar. 28, 2013) ....................15

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ....................................................................................................8

*Resolution Tr. Corp. v. Kemp*,
    951 F.2d 657 (5th Cir. 1992) ....................................................................................17

*Rieder v. Woods*,
    603 S.W. 3d 86 (Tex. 2020) .................................................................................9, 10

*In re Rotavirus Vaccines Antitrust Litig.*,
    30 F.4th 148 (3d Cir. 2022) .....................................................................................13

*S. Tex. Water Auth. v. Lomas*,
    223 S.W.3d 304 (Tex. 2007) ....................................................................................16

*Sharyland Water Supply Corp. v. City of Alton*,
    354 S.W.3d 407 (Tex. 2011) ....................................................................................16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ...................................................................................................8

*Tawes v. Barnes*,
    340 S.W. 3d 419 (Tex. 2011) ....................................................................................17

*In re Weekley Homes, L.P.*,
    18 S.W. 3d (Tex. 2005) .............................................................................................14

*Wright v. Hernandez*,
    469 S.W. 3d 744 (Tex. App. 2015) ............................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 65 .....................................................................................1, 17

MODEL RULES OF PROF'L CONDUCT R. 1.8(a)(1) ................................................................16

MODEL RULES OF PROF'L CONDUCT R. 5.4(c) ..................................................................16

TEXAS DISCIPLINARY R. OF PROF'L CONDUCT R. 1.08(e) ............................................16

Plaintiff Arigna Technology Limited ("Arigna") respectfully submits this combined Answering Brief in Opposition to Defendant Longford Capital Fund, III, LP's ("Longford") Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay Pending Arbitration ("Motion to Compel") (D.I. 17) and Opening Brief in Support of Arigna's Motion to Enjoin an arbitration Longford purported to institute before JAMS against Arigna (the "Arbitration").

## NATURE AND STAGE OF PROCEEDINGS

Arigna filed suit in this Court against Longford seeking declaratory relief regarding Longford's filing of a UCC-1 financing statement against Arigna that purports to perfect a first-priority security interest in litigation settlement proceeds obtained by Arigna and others on December 18, 2023 (the "Complaint"). (D.I. 2 at 1.) On January 8, 2024, Longford filed the Arbitration petition against Arigna and Susman Godfrey L.L.P. ("Susman"), which necessitated Arigna's filing of the instant Motion to Enjoin Arbitration (the "Motion"). (*See* D.I. 18, Ex. 1.) On January 9, 2024, Longford filed a Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay Pending Arbitration (the "Motion to Compel"). (D.I. 17.)

## SUMMARY OF ARGUMENT

1)    The Court should enter an order enjoining Arigna's participation in the Arbitration, and denying Longford's Motion to Compel because there is no valid agreement to arbitrate between Arigna and Longford and Longford cannot prove that the Engagement Agreement and Funding Agreement are a unitary instrument necessary to compel Arigna to Arbitration.

2)    Longford cannot enforce the Funding Agreement against Arigna under agency or estoppel theories. Nor is Longford a third-party beneficiary of the Engagement Agreement.

3)    Federal Rule of Civil Procedure 65 confirms that Arigna's likelihood of success, risk of irreparable harm, the balance of the equities, and public interest justify an injunction.

## STATEMENT OF FACTS

### A.    The Parties and Relevant Non-Parties

Arigna is a patent holding company registered in Ireland.  (D.I. 4 at 2.)  Susman is a law firm specializing in litigation.[2]  (D.I. 2 ¶ 7.)  Longford is a private investment company that invests in commercial legal claims.[3]  (*Id.* ¶ 2.)   Atlantic IP Services, LLC and Atlantic IP Services Ltd. ("Atlantic") are entities that provide intellectual property services to licensors, including Arigna, to assist with engineering, accounting, bookkeeping, legal, and other services associated with patent monetization.[4]  (*Id.* ¶ 10.)

### B.    The Engagement Agreement

Arigna engaged Susman on August 24, 2020 to enforce its intellectual property rights against various entities.  (D.I. 4 at 2.)[5]  The Engagement Agreement, which is governed by Texas law, describes the relationship between Susman (as attorney) and Arigna (as client), defines the scope of the work Susman would perform for its client, explains the mechanism by which Susman will be paid for its services, permits Susman to satisfy its obligations to Longford under the Funding Agreement, describes how Susman's engagement can be terminated, selects governing law, and establishes a process for resolving disputes between ***Susman and Arigna***.  (D.I. 4.)  The Engagement Agreement limits the scope of Susman's engagement to the Claims[6] that will be asserted by Arigna.  (*See* D.I. 4 at 2-20.)  The Engagement Agreement also confirms that Susman does not "represent persons or entities related to Client such as corporate officers, parents,

---

[2] *See* https://www.susmangodfrey.com/why-susman-godfrey/ (last visited Jan. 23, 2024).
[3] *See* https://www.longfordcapital.com/longford-capital (last visited Jan. 23, 2024).
[4] *See* https://www.atlanticips.com/ (last visited Jan. 23, 2024).
[5] All page citations to the Engagement Agreement filed as D.I. 4 and Funding Agreement D.I. 4-1 are to the ECF heading page number.
[6] "Claims" is defined in the Engagement Agreement as "claims you have against up to eight (8) of the entities identified on Exhibit H . . . for damages relating to any alleged infringement of the patents to be selected from those listed on Exhibit I."  (D.I. 4 at 2.)

subsidiaries or affiliates." (D.I. 4 at 3.)

The Engagement Agreement contains an arbitration provision, which provides:

Any dispute arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement—including any claim of legal malpractice, breach of fiduciary duty or similar claim and any claim involving fees or expenses—shall be resolved by final and binding arbitration conducted in Houston, Texas, administered by and in accordance with the then-existing JAMS Comprehensive Arbitration Rules and Procedures.

(D.I. 4 at 17.) The arbitration clause provides, among other things, that "[b]y so agreeing, *you and we* are waiving the right to a jury trial . . ." (D.I. 4 at 1 (emphasis added).) The Engagement Agreement defines "we" as Susman Godfrey L.L.P., and "you" as Arigna Technology Limited. (D.I. 4 at 2.) The Engagement Agreement contains an integration clause, which confirms that it is the "final and mutual understanding of the parties. *It replaces and supersedes any prior agreements or understandings, whether written or oral.*" (D.I. 4 at 18 (emphasis added).)

While Arigna does not utilize litigation funding because of, among other reasons, Irish champerty laws, Arigna did not object to Susman's desire to diversify its contingency risk with litigation funding from Longford. (Declaration of Gerald Padian (hereinafter "Padian Decl."), at ¶¶ 3-4.) To secure **Susman's** obligations to Longford "under **their** Funding Agreement," Arigna contracted with Susman in the Engagement Agreement to grant Longford "a first-priority security interest in the Proceeds[7] recovered" through Susman's work under the Engagement Agreement.

---

[7] "Proceeds" is defined as "any and all gross, pre-Tax monetary recovery or the value of any other consideration received or to be received, by you, in connection with the Claims, as a direct or indirect result of, part of, in connection with, relating to, or arising from, (a) awards, (b) damages, (c) royalties (including the value of royalties), (d) monies, (e) lump-sum payments, (f) up-front payments, (g) settlement amounts, (h) distribution of property, (i) cash value of equities, (j) judgments, (k) settlements or any other form of resolution (reached before and after the initiation of litigation, arbitration, mediation, or a complaint), (l) injunctions, (m) sales, (n) contracts or licenses, (o) attorneys' fees, (p) awards of sanctions (as permitted by applicable law), (q) voluntary dismissals, (r) other cash and non-cash amounts paid, received, or to be received by, transferred, owed, or inuring, directly or indirectly, to you (s) interest received in connection therewith agreed in a settlement or awarded in a judgment, and (t) any and all gross, pre-Tax monetary payment or

(D.I. 4 at 10.)  On August 28, 2020, Longford caused to be filed with the Washington, D.C. Recorder of Deeds, a UCC Financing Statement (the "UCC-1") purporting to perfect its first-priority security interest in the Proceeds.  (D.I. 2 ¶ 12.)  Longford is not a signatory, party to, or third-party beneficiary of the Engagement Agreement, which sets forth the rights of Susman and Arigna only.

### C.    The August 25, 2020 Funding Agreement

To manage its contingency risk, Susman and Longford negotiated and ultimately entered into the Funding Agreement, whereby Longford agreed to fund certain attorneys' fees and costs Susman would incur in connection with representing Arigna pursuant to the Engagement Agreement.  (D.I. 4-1 at 2.)  Unlike the Engagement Agreement, which is governed by Texas law, the Funding Agreement is governed by the laws of the State of Illinois.  (D.I. 4-1 at 33.)  The Funding Agreement also purports to expand the definition of "Proceeds" beyond that set forth in the Engagement Agreement to include recoveries by "Affiliates" of the "Claim Owner."  (D.I. 4-1 at 21.)  The Funding Agreement expressly confirms that funding was provided to Susman, not Arigna.  (D.I. 4-1 at 2 ("WHEREAS**,** Claim Owner has given consent ***to the funding by LCF to SG*** and has agreed to pay to LCF a portion of Proceeds as specified below.") (emphasis added).)  Arigna is not a party to the Funding Agreement, did not sign the Funding Agreement, did not accept any obligations under the Funding Agreement, and is not a third-party beneficiary of the Funding Agreement.  (D.I. 4-1 at 39 ("This Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or

---

the value of any other consideration received, or to be received, directly or indirectly by you from any person from the infringement, sale, license, or other exploitation of all or any portion of you or the Patents." (D.I. 4-1 at 22.)

remedy of any nature whatsoever under or by reason of this Agreement, it being acknowledged and agreed, for the avoidance of doubt, ***Claim Owner is not a third-party beneficiary of this Agreement***.") (emphasis added); *id.* at 2 (defining "Parties" to include only Longford and Susman).)

The Funding Agreement contains an arbitration clause that provides that "[a]ny Dispute arising out of or relating to this Agreement, including the breach, termination, enforcement, interpretation or validity thereof, or the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Chicago, Illinois, before a panel of three arbitrators. The arbitration shall be administered using the arbitration rules of the American Arbitration Association current at the time the Dispute is brought, which rules are deemed to be incorporated herein by reference." (D.I. 4-1 at 35.) The Funding Agreement also contains an integration clause confirming it "constitutes the entire agreement between the Parties with respect to the matter covered herein." (D.I. 4-1 at 39.)

### D.    The Settlement

On September 10, 2021, Arigna, represented by Susman, filed three patent infringement actions in the United States District Court for the Western District of Texas against an entity that Arigna claimed infringed certain patents owned by Arigna (collectively, the "Litigation"). On November 18, 2023, Arigna entered into a Settlement and License Agreement (the "Settlement Agreement") with the alleged infringer to resolve the Litigation (the "Settlement"). In addition to settling with Arigna, the Settlement Agreement compromised the claims of thirteen other individuals and/or entities (collectively, the "Other Settling Parties"), with which Longford had no relationship, brought in at least thirteen separate proceedings around the world, in which Longford has no involvement. To resolve all of these claims, the Settlement Agreement contemplated a payment made not to Arigna, but to Atlantic, from which distributions would then be made to

Arigna and the various Other Settling Parties that licensed their intellectual property rights and otherwise settled their claims (the "Settlement Payment").

Upon learning of the Settlement and to take control of the Settlement Payment, without Arigna's knowledge or consent Longford directed Susman – still Arigna's counsel – to notify the accused infringer of Longford's UCC-1.  (Padian Decl. ¶ 5.)  Notwithstanding Longford's efforts to disrupt the Settlement, the alleged infringer made the Settlement Payment on December 15, 2023.  (*Id.* ¶ 6.)  Arigna promptly paid to Susman's escrow account the entirety of its portion of the Settlement Payment as required by the Engagement Agreement.  (*Id.* ¶ 7.)  To resolve Longford's improper claims to the entire Settlement Payment, Arigna filed this action seeking a declaration that Longford's UCC-1 extends only to Proceeds received by Arigna, as defined in the Engagement Agreement Arigna signed.  (D.I. 2.)  Longford responded by sending an arbitration demand, purportedly before JAMS in Houston, Texas, to Arigna's counsel.  (D.I. 18, Ex. 1.)

### E.   Response to Longford's Statement of Facts

Arigna disputes many of the purported facts set forth in Longford's Opening Brief in Support of its Motion to Compel (the "Longford Opening Brief" or "Op. Br.").  While Arigna will not burden the Court by identifying all of the facts with which it disagrees, Arigna specifically disputes the allegedly "salient facts" that: (i) Arigna asked Longford for funding (Op. Br. at 1); (ii) Longford's payments to Susman were on behalf of Arigna (*id.*); (iii) Longford, Arigna, and Susman entered into a singular agreement, as opposed to two separate agreements (*id.*); (iv) Arigna agreed that Longford would share in Proceeds received by its affiliates (*id.*); (v) the Engagement Agreement required the entire Settlement Payment, and not just Arigna's portion of the Settlement Payment, to be placed in an escrow account controlled by Arigna, Susman, and Longford (*id.* at 2); (vi) Longford is entitled to ███████████ the Settlement Payment (*id.*); (vii) Arigna has failed to pay Longford any amount (*id.*); and Arigna agreed to arbitrate with Longford (*id.*).

## ARGUMENT

### I.    Legal Standard

The Federal Arbitration Action ("FAA") provides federal courts not only with the power to compel arbitration where a valid arbitration agreement covering the litigation subject matter exists but *also the duty to enjoin arbitration* when a dispute is not arbitrable.  *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990) (emphasis added), *overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 511 (2002) ("If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement*, it is obliged to enjoin arbitration*.") (emphasis added); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) ("[T]he FAA allows a district court to compel, or enjoin, arbitration as the circumstances may dictate.").  In deciding "whether a party may be compelled to arbitrate a dispute with another party, [a court] must determine (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009); *see also Dorco Co. Ltd. v. Gillette Co. LLC*, 18-1306-LPS-CJB, 2019 WL 1874466, at *1 (D. Del. Mar. 18, 2019) (enjoining arbitration because "the matter at issue clearly falls outside of the substantive scope of the agreement.").

"Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x. 931, 936 (5th Cir. 2007) (internal citations omitted).  "Instead, to determine whether an agreement to arbitrate is valid, courts apply ordinary state-law principles that govern the formation of contracts." *Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016) (internal citations omitted).  Although there

is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms.") (internal citations omitted). The party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate. *See, e.g.*, *Huckabay v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).

In deciding whether parties agreed to arbitrate, courts "do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement." *Wright v. Hernandez*, 469 S.W. 3d 744, 751 (Tex. App. 2015) (internal citations omitted). The law is clear that "parties may specify with whom they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement.").

## II.    Arigna and Longford Do Not Have a Valid Agreement to Arbitrate

To compel arbitration, Longford must prove the existence of a valid agreement to arbitrate between Arigna and Longford. *Huckabay*, 892 F.3d at 688. No such agreement exists and there is no contractual privity between Arigna and Longford. Arigna is not party to the Funding Agreement and Longford is not party to the Engagement Agreement. (*See, e.g.*, D.I. 4 at 2 ("This Agreement describes the terms and conditions of the relationship between you as client and us as lawyers.")); D.I. 4-1 at 2 ("This Funding Agreement, dated as of August 25, 2020, is entered into by and between Longford Capital Fund III, LP ('LCF'), a Delaware limited partnership, on the one hand, and Susman Godfrey LLP ('SG'), a Texas limited liability partnership, on the other hand

8

(LCF and SG are collectively referred to herein as the 'Parties' and individually as a '"Party"').)
Susman, which is party to both agreements, has not asserted any claims against Arigna.

For Longford to compel Arigna to Arbitration, Longford must prove that the Engagement
Agreement and the Funding Agreement are part of a single, unified instrument to enforce their
terms against Arigna. Alternatively, Longford must prove that it is a third-party beneficiary of the
Engagement Agreement, with the right to enforce the arbitration provision contained therein. As
set forth below, Longford cannot and has not carried its burden and the Court should deny the
Motion to Compel and enjoin the Arbitration from proceeding against Arigna.

Longford cannot prove that the Engagement Agreement and Funding Agreement constitute
a single, unitary instrument. Under Texas law, which governs the Engagement Agreement,
"instruments pertaining to the same transaction may be read together to ascertain the parties' intent
. . . [b]ut when construing multiple documents together, courts must do so with caution, bearing in
mind that tethering documents to each other is simply a device for ascertaining and giving effect
to the intention of the parties and cannot be applied arbitrarily and without regard to the realities
of the situation." *Rieder v. Woods*, 603 S.W. 3d 86, 94–95 (Tex. 2020). Under Illinois law, which
governs the Funding Agreement, "instruments executed at the same time, by the same parties, for
the same purpose, and in the course of the same transaction are regarded as one contract and will
be construed together . . . However, such instruments must be construed as separate agreements
when there is evidence that the parties intended for the documents to be read separately."
*Dearborn Maple Venture, LLC v. SCI Illinois Servs., Inc.*, 2012 IL App (1st) 103513, ¶ 31, 968
N.E.2d 1222, 1232, *as modified on denial of reh'g* (May 29, 2012) (internal citations omitted).

Although they were executed on the same day, the Engagement Agreement and Funding
Agreement were signed by different parties (Arigna/Susman; Susman/Longford) for different

purposes (to obtain legal representation; to fund litigation), are governed by different law (Texas; Illinois), select different dispute resolution procedures before different tribunals in divergent fora (JAMS arbitration in Houston; AAA arbitration in Chicago), and contain competing integration clauses that confirm each agreement stands alone. *See, e.g., Rieder*, 603 S.W. 3d at 102 ("The mere fact that the Cadbury Agreement and the Series Agreement bore some relationship to one another and were executed on the same day is not controlling. The two agreements were executed by different parties, deal with separate situations, impose distinct obligations, and are governed by different law. . . Perhaps most importantly, we are unable to glean from either agreement's express terms that they were executed as a part of the same business transaction. To the contrary, by including a merger clause in each agreement, the parties manifested an intent that the agreements would operate independently."); *Dearborn Maple Venture*, 2012 IL App (1st) 103513, at ¶ 32, 968 N.E.2d at 1233 ("Based on our review of the three agreements in their entirety, we find that although they were executed by the parties in connection with the same business deal, each agreement set forth the specific terms by which its separate and unique purpose would be fulfilled. Thus, we find that the parties intended the three agreements, each with a separate purpose, to be construed as separate agreements."). On this record, the Court cannot conclude that the parties intended the Engagement Agreement and Funding Agreement to operate as a single, unified instrument.[8] In the absence of a single, unified instrument, Longford cannot identify any

---

[8] Longford's reliance upon *Gray & Co. Realtors, Inc. v. Atl. Housing Fdn., Inc.*, 228 S.W. 3d 431, 436 (Tex. App. 2007) and *Castroville Airport, Inc. v. City of Castroville*, 974 S.W. 2d 207, 211–12 (Tex. App. 1998) is misplaced because the contracts in those cases were meaningless unless read together and were construed together simply because they cross-referenced each other. (Op Br. at 11.) Both the Engagement Agreement and Funding Agreement have independent meaning and manifest substantial evidence that the parties intended them to operate separately.

agreement with Arigna to arbitrate any disputes they may have with each other – even if they both separately agreed to arbitrate their disputes with Susman.

### III.    Longford Cannot Enforce the Arbitration Clauses Contained in the Engagement Agreement or the Funding Agreement Against Arigna

Unable to demonstrate a direct agreement to arbitrate with Arigna, Longford must demonstrate that it otherwise can enforce the arbitration clauses in the Engagement Agreement and the Funding Agreement to compel Arigna to Arbitration.  Longford cannot carry this burden. "Arbitration agreements apply to nonsignatories only in rare circumstances."  *See, e.g.*, *Bridas S.A.P.I.C. v. Gov't. of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003); *East Tex. Med. Ctr. Regional Healthcare Sys. v. Slack*, 816 F. Supp. 2d 719, 722 (E.D. Tex. 2013) (noting that FAA "typically applies to non-signatory defendants where the signatory plaintiff was compelled to arbitrate claims inherently inseparable from the claims litigated against the non-signatory defendants.").  The Fifth Circuit has recognized six theories for binding a non-signatory to an arbitration agreement: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary.  *East Tex. Med. Ctr. Regional Healthcare Sys.*, 816 F. Supp. 2d at 722.  Longford claims that it can enforce the arbitration clause in the Engagement Agreement based on three of these theories: agency; claimed third-party beneficiary status; and estoppel.  (Op. Br. at 11-13.)  None of these theories gives Longford, a non-signatory to the Engagement Agreement, the right to enforce its arbitration clause against Arigna.

### A.    Susman Did Not Execute The Funding Agreement As Arigna's Agent

Arigna did not execute, and is not party to, the Funding Agreement.  Consequently, Longford contends that Susman executed the Funding Agreement as Arigna's agent.[9]  (Op. Br. at

---

[9] Longford's Houston-based JAMS Arbitration demand does not comply with the arbitration clause in the Funding Agreement, which requires arbitration before AAA in Chicago, Illinois.

11.)  "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *East Texas Med. Ctr. Reg'l Helathcare Sys.*, 916 F. Supp. 2d at 722; *see also Bridas*, 345 F.3d at 362 (holding that parties are presumed to be contracting for themselves). Susman did not execute the Funding Agreement as Arigna's agent; rather, Susman executed the Funding Agreement on its own behalf to obtain the benefits of the funding Longford offered.

Several facts support this conclusion.  First, Susman, not Arigna, received the benefits under the Funding Agreement.  (*See, e.g.*, D.I. 4-1 at 5-18.)  Second, The Funding Agreement repeatedly references Susman's, not Arigna's, obligations.  (*See, e.g.*, *id.* at 22 ("SG's failure or inability to perform any of its material obligations under any provision of this Agreement . . . .")); *id.* at 23 ("SG is required to electronically submit monthly invoices to LCF detailing the Enforcement Campaign Fees/Expenses for which reimbursement is sought, after redaction of privileged information."); *id.* at 29 ("This Agreement and the other Funding Documents have been duly executed and delivered by SG, and, assuming the due authorization, execution, and delivery hereof and thereof by LCF, constitute the valid and legally binding obligations of SG . . . .").)  Third, the Engagement Agreement defines the scope of the agency relationship between Arigna and Susman and limits such relationship to the prosecution of Claims.  (D.I. 4 at 3 ("SCOPE OF ENGAGEMENT").)  While the Engagement Agreement manifests consent to the Funding Agreement Susman negotiated with Longford, it does not authorize Susman to execute the Funding Agreement on behalf of Arigna and cannot bind Arigna.  (*Id.* at 19 (noting that "SG is not

---

(D.I. 4-1 at 35.)  Having failed to comply with the Funding Agreement's arbitration clause, Longford cannot enforce it against Arigna.  That Longford sought Susman's agreement to modify the arbitration provision in the Funding Agreement, but not Arigna's, further disproves Longford's unitary instrument theory and confirms that Arigna is not party to the Funding Agreement.

representing you in connection with the negotiation or execution of this Agreement or the Funding Agreement . . . and that this Agreement and the Funding Agreement were the product of arm's length negotiation with us.").)   Fourth, the Engagement Agreement refers to the Funding Agreement between Susman and Longford as "their" Funding Agreement.   (D.I. 4 at 10 ("As collateral security for the obligations of Susman Godfrey to LCF under **their** Funding Agreement.") (emphasis added).)  If Susman executed the Funding Agreement as Arigna's agent, the Engagement Agreement would refer to "their" Funding Agreement differently.

The only case upon which Longford relies to support its agency argument is based on apparent authority and involves the application of Pennsylvania law.  (Op. Br. at 11 (*citing In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148 (3d Cir. 2022).)  Longford cannot reasonably claim that Pennsylvania law bears on whether the Engagement Agreement, governed by Texas law, created an agency relationship or Susman signed the Funding Agreement, governed by Illinois law, as an agent for Arigna.  Even if Pennsylvania law applied, *Rotavirus Vaccines* is inapposite. There, the Third Circuit bound a party to an arbitration clause signed by an apparent agent because the principal gave limited authority to the agent and the agent's conduct demonstrated apparent authority to the third-party.  *Rotavirus Vaccines*, 30 F.4th at 157.  Here, neither is true.

The record does not evidence that Arigna delegated any authority to Susman in connection with the Funding Agreement.   Longford's knowledge of the Engagement Agreement and involvement in the negotiation of the Funding Agreement make it impossible for Longford reasonably to believe that Susman was acting to execute the Funding Agreement for Arigna, rather than for itself.  *Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 30 (Tex. App. 1998) ("[I]n order to charge the principal through apparent authority of his agent, the third party must establish conduct by the principal or written or spoken words by the principal that would lead a reasonably

prudent person to believe the agent had the authority to act."); *Barraia v. Donoghue*, 49 Ill. App. 3d 280, 283, 364 N.E.2d 952, 954 (1977) ("In order for the acts of an agent to bind his principal when entering into a contract with a third person, such acts must be within the express, implied or apparent authority conferred on him by the principal.  Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds his agent out as possessing.  It is the authority which a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.").  The benefits conferred to Susman by the Funding Agreement, the conduct of the parties, the language of the applicable contracts, Longford's knowledge of the Engagement Agreement, and the relationship between Susman and Arigna all confirm that Susman was acting for its own benefit, rather than as an agent for Arigna, when it executed the Funding Agreement.  *Com. Union Assurance Co. v. Winstead*, 213 S.W. 955, 957 (Tex. Civ. App. 1919) ("An agent cannot avail himself of his agency to do for his own benefit that which injures or affects his principal."); *Lincoln Cardinal Partners v. Barrick*, 218 Ill. App. 3d 473, 477, 578 N.E.2d 316, 319 (1991) ("A person who undertakes to act as agent for another cannot be permitted to deal in the agency matter on his own account and for his own benefit without the consent of principal, freely given with full knowledge of every detail known to the agent which might affect the transaction.").  Longford cannot enforce the arbitration clause in the Funding Agreement against Arigna.

### B.    Estoppel Does Not Bind Arigna to The Funding Agreement

Longford next argues that Arigna is estopped from challenging the Arbitration because it purportedly received benefits under the Funding Agreement.  (Op. Br. at 13.)  "In some cases, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself.  The analysis here focuses on the nonparty's conduct during the performance of the contract."  *In re Weekley Homes, L.P.*, 18 S.W. 3d, 127 132-133 (Tex. 2005); *A.D. v. Credit*

*One Bank, N.A.*, 885 F.3d 1054, 1064 (7th Cir. 2018) ("Estoppel is an equitable doctrine that prevents a non-signatory from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.") (internal quotations omitted). Longford cannot show that Arigna received any direct benefit under the Funding Agreement that could justify estoppel.

Susman, not Arigna, sought funding from Longford to manage its contingency risk. While Arigna consented to Susman's desire to obtain funding, Arigna never benefited from Longford's funding efforts; only Susman benefited from the Funding Agreement. (D.I. 4 at 3-7; Padian Decl. ¶¶ 2-4.) Arigna does not utilize litigation funding because of Irish champerty laws and there is no evidence that Arigna needed litigation finance to enforce its patent rights and could not have retained competent counsel on a straight contingency fee. (*Id.*) That Arigna consented to Susman's entry into the Funding Agreement for Susman's own benefit does not show that Arigna benefited from the Funding Agreement such that it is estopped from challenging the Arbitration.

Longford's position also conflicts with the Funding Agreement's express disclaimer that Arigna would not benefit from it. (D.I. 4-1 at 39 ("***This Agreement is for the sole benefit of the Parties hereto*** and their respective successors and permitted assigns and ***nothing herein,*** express or implied, ***is intended to or shall confer upon any other Person or entity*** any legal or equitable right, ***benefit*** or remedy of any nature whatsoever under or by reason of this Agreement, it being acknowledged and agreed, for the avoidance of doubt, ***Claim Owner is not a third-party beneficiary of this Agreement***.") (emphasis added).) Nor does Arigna's declaratory judgment claim against Longford arise under the Funding Agreement; it relates to the security interest Arigna provided pursuant to the Engagement Agreement. *Raymond James Fin. Servs., Inc. v. Peveto*, No. 09-12-00472-CV, 2013 WL 1279404, at *3 (Tex. App. Mar. 28, 2013) ("If the claim by a

nonsignatory stands independently of the underlying contract, generally the claim need not be arbitrated."). Having disclaimed Arigna as a beneficiary of the Funding Agreement, and without receiving benefits under the Funding Agreement, estoppel cannot compel Arigna to Arbitration.

### C.    Longford is Not a Third-Party Beneficiary of the Engagement Agreement[10]

Unable to enforce the Funding Agreement's arbitration clause against Arigna, Longford argues that it is a third-party beneficiary of the Engagement Agreement. (Op. Br. at 12-13.) Under Texas law, "[a] person seeking to establish third-party-beneficiary status must demonstrate that the contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)). "Importantly, the fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement does not make him a third-party beneficiary." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002)) (internal quotations omitted). "The intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be

---

[10] No Texas authority has recognized a third-party beneficiary of an attorney engagement agreement. *Dolenz v. A--- B---*, 742 S.W.2d 82, 85 (Tex. App. 1987) ("Putting aside the legal question whether Dolenz can be a third party beneficiary of an agreement between the opposing party to a loan transaction and that party's attorney, a question as to which we harbor considerable doubt, the undisputed evidence in the summary judgment record is that Huddleston's attorney never agreed with Huddleston to create such a lien."). Ethical considerations and the preservation of privilege may explain why. *See* MODEL RULES OF PROF'L CONDUCT R. 1.8(a)(1) (2024) (limiting when lawyer can enter business relationship with client and emphasizing that "lawyers' duties and obligations are with their client"). Special rules govern third-party payment of attorneys' fees to avoid undue interference with counsel's independent professional judgment. *See* MODEL RULES OF PROF'L CONDUCT R. 5.4(c) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another); TEXAS DISCIPLINARY R. OF PROF'L CONDUCT R. 1.08(e) ("A lawyer shall not accept compensation for representing a client from one other than the client unless . . . there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship."). This Court should not expand Texas law by granting Longford third-party beneficiary status under the Engagement Agreement.

denied.'" *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). There is "a presumption against, not in favor of third-party beneficiary agreements." *MCI*, 995 S.W. 2d at 652. "Any doubt should be resolved against finding an intent to benefit a third party." *Resolution Tr. Corp. v. Kemp*, 951 F.2d 657, 663 (5th Cir. 1992) (internal citations omitted).

Longford cannot demonstrate it is a third-party beneficiary of the Engagement Agreement. The plain language of the Engagement Agreement makes clear that Arigna and Susman intended to engage Susman to provide legal counsel to Arigna to enforce its intellectual property rights. (D.I. 4 at 2.) The purpose of the Engagement Agreement was to govern the relationship between Susman (the attorney) and Arigna (the client). (D.I. 4 at 2.) Contrary to Longford's unsupported conclusion, the Engagement Agreement does not manifest an intent to confer benefits upon Longford; rather, it confers benefits on Susman by providing a mechanism for Susman to satisfy its obligations to Longford using assets belonging to Arigna. That Longford may have an interest in the Engagement Agreement's provisions concerning repayment of Longford's funding of Susman, the Funding Agreement referenced therein, or the extension of security to secure Susman's collateral obligations thereunder, does not render Longford a third-party beneficiary under Texas law. *Tawes v. Barnes*, 340 S.W. 3d 419, 428–29 (Tex. 2011) (holding that allocation of payment responsibility between parties to agreement does not confer third-party beneficiary status on payment recipient); *Bridas*, 345 F.3d at 362 (recognizing that parties are presumed to be contracting for themselves only, and presumption may be overcome only if the intent to create a third-party beneficiary is clearly evidenced in the contract). Longford is not entitled to enforce the Engagement Agreement's arbitration provision against Arigna as a third-party beneficiary and the Court should enjoin Longford from proceeding with the Arbitration against Arigna.

**IV.    Equitable Factors Under Rule 65 Justify Enjoining The Arbitration.**

To enjoin the Arbitration, Arigna "must show: (1) a reasonable probability of success on the merits concerning arbitrability and (2) that it will be irreparably injured pendente lite if relief is not granted." *PaineWebber*, 921 F.2d at 514; *American Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 473 (D. Del. 1998); *see Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990).  The Court should find that Arigna is likely to succeed on the merits, Arigna will suffer irreparable harm if improperly forced to arbitrate its claims against Longford, and the balance of the equities and public interest favors the requested injunction.

**A.    Arigna Is Likely to Succeed on The Merits**

Arigna is likely to prevail in showing that Longford cannot enforce the arbitration clauses contained in the Engagement Agreement or Funding Agreement against Arigna for the reasons set forth above.  (*See supra* §§ I, II, III.)  Arigna has not agreed to arbitrate with Longford regarding Longford's claimed security interest and the Court should find this factor is satisfied.  (*Id.*)

**B.    Arigna Will Suffer Irreparable Harm**

Arigna never agreed to arbitrate disputes with Longford in either the Engagement Agreement or Funding Agreement.  "The Third Circuit recognizes a party is irreparably harmed as a matter of law if forced to arbitrate a matter that it has not agreed to arbitrate." *Am. Life Ins. Co.*, 25 F. Supp. 2d at 479 (*citing PaineWebber*, 921 F.2d at 515).  If Arigna is wrongfully compelled to arbitrate with Longford, it will suffer irreparable harm.  *In re Abeinsa Holding, Inc.*, C.A. No. 16-10790 (KJC), 2016 WL 5867039, at *2 (Bankr. D. Del. Oct. 6, 2016) (recognizing that "forcing a party into an arbitration it did not agree to constitutes *per se* irreparable harm"); *BuzzFeed, Inc. v. Anderson*, C.A. No. 2022-0357-MTZ, 2022 WL 15627216, at *19 (Del. Ch. Oct. 28, 2022) ("Defendants cannot force Plaintiffs to arbitrate under a provision to which they are not

18

bound without inflicting irreparable harm upon Plaintiffs."); *Qwest Commc'ns Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 821 A.2d 323, 329 (Del. Ch. 2002) ("There is no question that Qwest will suffer irreparable injury if the defendants continue to pursue their Demand for Arbitration, as Qwest will lose an important contract right affecting a high stakes insurance coverage dispute."). The Court should find that subjecting Arigna to the risk of an improper and unjustified Arbitration constitutes irreparable harm.

### C.    The Balance of Equities and Public Interest Favor Granting an Injunction

While the reasonable likelihood that Arigna will succeed on the merits on its declaratory judgment claim, coupled with the irreparable harm Arigna will suffer if the Court declines to enjoin the arbitration, warrants granting Arigna's Motion and denying Longford's Motion to Compel, the balance of the equities and public interest also support the requested injunction. Longford will not suffer irreparable harm if its attenuated relationship with Arigna is litigated in this Court, rather than in Longford's preferred arbitral tribunal, to which Arigna did not agree. *See, e.g.*, *AffiniPay, LLC v. West*, No. CV 2021-0549-LWW, 2021 WL 4262225, at *10 (Del. Ch. Sept. 17, 2021) ("The balance of the equities also favors the issuance of an injunction barring . . . the Arbitration. If the court does not grant an injunction, AffiniPay may be subjected to arbitral rules in an arbitral forum that it never agreed to. . . Neither party would be forced to arbitrate under procedures inconsistent with the parties' arbitration agreements.").

The public interest also favors an injunction. While public interest "generally favors arbitration, this policy is based on the presumption that the subject of the arbitration is one that the parties actually agreed to arbitrate." *Chi. Sch. Reform Bd. of Trs. v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999). Here, the public interest will be served because a preliminary injunction will minimize the risk that the parties will suffer the inconvenience, cost, harm, and delay associated with a protracted arbitration only to have the parties return to the

present state of affairs. *See Flowserve Corp. v. Burns Int'l Servs. Corp.*, 423 F. Supp. 2d 433, 440 (D. Del. 2006) (stating that by granting the injunction "the Court will prevent duplicative litigation . . . thereby conserving judicial resources and protecting the integrity of the Court's jurisdiction"); *Bestway (USA), Inc. v. Sgromo*, No. 17-cv-00205-HSG, 2018 WL 4677681, at *2 (N.D. Cal. Sept. 27, 2018) (finding that enjoining arbitration would be in the public interest because "the preliminary injunction simply preserves the status quo").

Where a district court has jurisdiction over a dispute, as it does over Arigna's declaratory judgment claim, it is in the public interest for the court to resolve the dispute. *See Floral Trade Council of Davis, Ca. v. United States*, 12 C.I.T. 603, 604 (Ct. Int'l Trade 1988) ("[T]he overriding public interest is in preserving the court's jurisdiction to resolve the dispute."); *Omnium Lyonnais D'Etancheite et Revetement Asphalte v. Dow Chemical Co.*, 441 F. Supp. 1385, 1390 (C.D. Cal. 1977) ("[T]he preliminary injunction is necessary in the public interest to protect this Court's jurisdiction."); *Commercializadora Portimex S.A. de C.V. v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 653 (E.D. La. 2005) ("[T]he injunction will not undermine the public interest, which in this case is embodied by the Court's strong interest in protecting its own jurisdiction and judgment."). This Court should find that Arigna's likelihood of success on the merits, irreparable harm, balance of the equities, and consideration of public interest factors requires an injunction prohibiting Longford from compelling an Arbitration to which Arigna did not agree.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Arigna respectfully asks this Court to deny Longford's Motion to Compel and grant its Motion to Enjoin the Arbitration.

Dated:  January 23, 2024

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff Arigna Technology Limited*