# AMENDED EXHIBIT 3



BARDEHLE PAGENBERG · Postfach 86 06 20 · 81633 München

**Per beA**

Landgericht München I
Prielmayerstr. 7
80335 München

München, 8. November 2022

*Beteiligte erhalten Abschrift!*

**Unser Zeichen: B165094VL  TMS/LST/Pta/erm**
**Aktenzeichen: 44 O 403/22**

In Sachen

**Arigna Technology Ltd.**

gegen

**Bayerische Motoren Werke AG**

Nebenintervenientin:
**Robert Bosch GmbH**

halten wir an unserem Antrag auf Anordnung einer Prozesskostensicherheit fest
und nehmen nachfolgend zu den diesbezüglichen Ausführungen der Klägerin mit
Schriftsatz vom 27. Oktober 2022 (nachfolgend: „*Schriftsatz Kl.*") Stellung.

**BARDEHLE
PAGENBERG**

Prof. Dr. Tilman Müller-Stoy
mueller-stoy@bardehle.de

Anita Peter
anita.peter@bardehle.de

Prinzregentenplatz 7
81675 München
T +49.(0)89.928 05-0
F +49.(0)89.928 05-444
www.bardehle.com

BARDEHLE PAGENBERG
Partnerschaft mbB
Patentanwälte Rechtsanwälte
Amtsgericht München
Partnerschaftsregister 1152
ISO 9001 certified

In cooperation with:

YUSARN AUDREY
www.yusarn.com
Singapore

| Deutschland | Rechtsanwälte US-Attorney-at-Law++ | | Patentanwälte* European Patent Attorneys** | |
| --- | --- | --- | --- | --- |
| BARDEHLE PAGENBERG Partnerschaft mbB Patent- und Rechtsanwälte Prinzregentenplatz 7 81675 München info@bardehle.de VAT DE 129725745 | Johannes Heselberger** | Anita Peter | Johannes Lang */** | Humphrey Morhenn */** |
| | Claus M. Eckhartt | Sebastian Horlemann | Joachim Mader */** | Thomas Schäfer ** |
| | Tilman Müller-Stoy | Daniel Seitz | Tobias Kaufmann */** | Ingo Lummer */** |
| Liste der Partner i.S.d. PartGG: www.bardehle.com/ de/impressum | Christof Karl */**/++ | Kerstin Galler | Georg Anetsberger */** | Johannes Scholz */** |
| | Philipe Kutschke | Ronja Schregle | Niels A. Malkomes */** | Sebastian Müller */** |
| | Henning Hartwig | Claudio Reinecke | Christian Haupt */** | Klaus Reindl */** |
| | Nadine Westermeyer | Jan Lersch | Axel Berger */** | Johannes Möller */** |
| List of partners in accordance with the German Partnership Act (PartGG): www.bardehle.com/ imprint | Pascal Böhner | Jochen Pagenberg Of Counsel | Benjamin Ruckert */** | Maggie Huang */** |
| | Stefan Lieck | | Patrick Heckeler */** | Nikolaus Buchheim */** |
| | Jan Bösing | | Alexander Wunsch */** | Daniel Werner */** |
| | Anna Giedke | | Maria Kreller-Schober */** | Michael-Wolfgang Waschak ** |
| | Michael Kobler | | Ralf Heddergott */** | Marius Fischer */** |
| | Christine Fluhme | | Fritz Teufel */** | Liding Zhang * |
| | Alexander von Mühlendahl | | Sorel Stan */** | Manuel Grimm * |
| | Karin Thanbichler-Brandl | | Preston Richard ** | Udo W. Altenburg */** Of Counsel |
| | Dominik Woll | | Henry Selby-Lowndes ** | |
| BARDEHLE PAGENBERG Partnerschaft mbB Patent- und Rechtsanwälte Breite Straße 27 40213 Düsseldorf info@dus.bardehle.de VAT DE 129725745 | Rebekka Jeschke | | Martin Hohgardt */** | |
| | | | Patrick Daum */** | |
| | | | Philipp Bovenkamp */** | |

| France | Avocats | | Patent Attorneys, European Patent Attorneys | Consultants |
| --- | --- | --- | --- | --- |
| BARDEHLE PAGENBERG SELAS Avocats au barreau de Paris SO Square Opéra 5 rue Boudreau 75009 Paris info@bardehle.fr VAT FR 71800645327 | Julien Fréneaux | Clément Jaffray | Marie-Claude Pellegrini | Jean-Claude Combaldieu |
| | Dominique Dupuis-Latour | Céleste Dufournier | Lionel Vial | |
| | Rebecca Delorey | Chloé Nicolas | Margaux Esselin | |
| | Axel Munier | | | |

| España | | | Patentanwälte* European Patent Attorneys** | |
| --- | --- | --- | --- | --- |
| BARDEHLE PAGENBERG S.L. Avenida Diagonal 420, 1º 1ª 08037 Barcelona info@bardehle.es VAT ES B 53486429 | | | Mathieu de Rooij ** | |

Please note our General Terms and Conditions and the CVs of our Attorneys at www.bardehle.com
Our offices act legally independent from the other countries' offices in each country and are not liable for those.



## A. Klägerin hat ihren Verwaltungssitz nicht in der EU

Entgegen den Ausführungen der Klägerin befindet sich der Verwaltungssitz der Klägerin, worauf nach § 110 Abs. 1 ZPO bei juristischen Personen bei der Bestimmung ihres „Sitzes" maßgeblich abzustellen ist (s. auch Klageerwiderung (KE), S. 7 f.), nicht in Dublin, Irland, sondern in den USA.

## I. Grundlegende Entscheidungen der Unternehmensleitung

## 1. Die Directors der Klägerin

Die Klägerin hat vier Directors, nämlich die Herren Padian und Prusko, beide wohnhaft in den USA sowie die Herren O'Gara und Morrison, beide wohnhaft in Irland. Herr Morrison ist zum 12. August 2022 für den ausgeschiedenen Herrn O'Sullivan eingetreten. Zum Nachweis überreichen wir hierzu den Auszug aus dem irischen Unternehmensregister (CRO) als

**- Anlage B 18 -**.

aa. Herr Prusko ist unstreitig „*Senior Portfolio Manager*" des US-Hedgefonds Magnetar Capital (s. KE, S. 13).

bb. Herr Morrison ist Senior Vice President der Maples Group (https://maples.com/en/people/p/paul-morrison), die Rechts- und Finanzdienstleistungen anbietet, und insbesondere komplexe Gesellschaftsstrukturen errichtet. Ihr Hauptsitz ist auf den Cayman Island (s. z.B. https://en.wikipedia.org/wiki/Maples_Group).

Der ausgeschiedene Herr O'Sullivan hat, wie auch der neue Director Herr Morrison, die Funktion des Senior Vice President bei der Maples Group inne (s. z.B. https://ie.linkedin.com/in/sean-o-sullivan-77556816). Bei beiden Personen handelt es sich um „*berufsmäßige Geschäftsführer*".

**2.** **Geschäftsführung reicht in die USA**

Die Klägerin behauptet unter Berufung auf zahlreich überreichte Dokumente, dass Herr O'Gara federführend die Geschäfte der Klägern betreibt. Tatsächlich aber werden die grundlegenden Unternehmensentscheidungen in den USA, insbesondere durch Herrn Padian, getroffen. Dies soll die speziell für die Patentdurchsetzung geschaffene komplexe gesellschaftsrechtliche Struktur der Klägerin offenbar verschleiern.

a. Die Geschäfte der Klägerin werden über die Atlantic IP Services, LLC mit Sitz in den USA geleitet, die alleinige Gesellschafterin der Atlantic IP Services Ltd. ist, mit der sich die Klägerin ihre Adresse in Dublin teilt.

Herr Padian ist „*Chairman and Managing Director*" der Atlantic IP Services (**Anlage B 3**). Wie sich aus seinem LinkedIn-Profil ergibt, hat er weitreichende Erfahrung in der Entwicklung neuer Technologien, der Lizenzierung von Patenten und der Monetarisierung von Portfolios (**Anlage B 4**). Die Monetarisierung von Portfolios durch Aushandlung von Lizenzverträgen, z.B. angetrieben durch Patentverletzungsverfahren, übt er konkret für die Klägerin aus, deren alleiniger Geschäftszweck dies ist.

Dies hat System. Herr Padian steht als Managing Director der Atlantic IP Services nicht nur der Klägerin sowie den weiteren parallel gegründeten Unternehmen Solas OLED, Ltd., Data Scape, Ltd., Arís Technolgies, Ltd und Neodrón Ltd vor (s. KE, S. 10). Vielmehr führt er in dieser Funktion ausweislich der aktualisierten Webseite der Atlantic IP Services (mindestens) noch neun weitere Unternehmen (Aire Technology Ltd., Daingean Technologies Ltd., Foras Technologies Ltd., Lionra Technologies Ltd., Ollnova Technologies Ltd., Scramoge Technology Ltd., Sonraí Memory Ltd., Speir Technologies Ltd., and Togail Technologies Ltd.). Wir überreichen einen Auszug der Webseite der Atlantic IP Services (abgerufen am 8. November 2022) als

- **Anlage B 19** -



und geben nachfolgend hieraus das aktualisierte Profil Herrn Padians wieder:



**Gerald Padian**

Managing Director

Jerry Padian is the Managing Director of Atlantic IP Services. He is also a Director for Ireland based companies Solas OLED, Ltd., Data Scape, Ltd., Arís Technologies, Ltd, Neodrón Ltd., Arigna Technology Ltd., Aire Technology Ltd., Daingean Technologies Ltd., Foras Technologies Ltd., Lionra Technologies Ltd., Ollnova Technologies Ltd., Scramoge Technology Ltd., Sonrai Memory Ltd., Speir Technologies Ltd., and Togail Technologies Ltd.. Jerry has extensive experience in the development of emerging technologies, patent licensing and portfolio monetization. He co-founded Realtime Data LLC. in 1998, an inventor-owned research and development company focusing on technology in the field of data acceleration and advanced data compression. Its patent portfolio has been licensed to some of the world's leaders in computing, wireless, WAN acceleration, data streaming and financial services. Jerry is an independent investor focused on investments in digital technology companies in the United States and in Ireland.

Jerry earned a B.S. in Economics from Fordham University and a J.D. from Fordham Law School.

*Abb. 1: Profil des Herrn Padian (**Anlage B 19**)*

Diese Unternehmen teilen sich sämtlich dieselbe Adresse samt Briefkasten.

b.  Die Klägerin argumentiert, dass Herr O'Gara nicht nur formal, sondern auch tatsächlich die Geschäfte der Klägerin federführend betreibe. Sie verweist hierzu auf Sec. 160 Abs. 2 Companies Act 2014, wonach eine Chairperson im Meeting des Board of Directors bei Stimmengleichheit eine doppelte oder entscheidende Stimme haben soll, sowie auf Ziffer 8.4 ihrer vermeintlichen Statuten (**Anlage K 36**).

Diese Argumentation überzeugt nicht. Zunächst weisen wir darauf hin, dass es sich bei der **Anlage K 36** ausweislich der Bezeichnung nicht um die Gesellschaftssatzung der Klägerin handelt, sondern um ein „*Investment Agreement*". Dieses wurde für die Klägerin von Herrn O'Gara unterzeichnet, allerdings nicht in seiner Funktion als (angeblich) federführender Direktor, sondern als Anwalt. Aufgrund der ganz erheblichen Schwärzungen des Investment Agreements und des Fehlens weiterer Unterschriftsseiten ist nicht erkennbar, zwischen welchen Vertragsparteien dieses Agreement



abgeschlossen wurde und ob dieses Agreement Rückschlüsse auf den tatsächlichen Verwaltungssitz der Klägerin zulässt. Dies muss daher mit Nichtwissen bestritten werden.

Zutreffend ist vielmehr, dass die Klägerin am 19. Dezember 2019 mit der „*Constitution of Arigna Technology Limited*", überreicht als

- **Anlage B 20** -,

durch Unterzeichnung von Herrn Padian als damals alleiniger Anteilseigner gegründet wurde. Dessen Unterzeichnung wurde durch Herrn O'Garas Unterschrift lediglich bezeugt.

Die Gesellschaftssatzung sieht das Amt der „*Chairperson*" ebenso wenig wie ein doppeltes Stimmrecht vor. Ziffer 20 der Gesellschaftssatzung gibt lediglich an, dass die Directors einen Executive Director wählen können. In den Dokumenten, die im irischen Unternehmensregister zur Klägerin hinterlegt sind, finden sich jedoch keine Dokumente über die Ernennung eines Executive Directors (oder einer Chairperson). Insbesondere findet sich dort kein Dokument, das Herrn O'Gara ein solches Amt zuweist.

Auch dem überreichten Investment Agreement, bei dem bereits unklar ist, wer die Unterzeichner sind, lässt sich nicht entnehmen, dass Herrn O'Gara die behauptete Funktion der Chairperson zugewiesen ist. Ziffer 8.4 gibt lediglich allgemein an, dass Chairperson des Boards eine in Irland wohnhafte Person sein soll („*The Chairman of the Board shall be appointed from among the Board and shall be resident in Ireland for tax purposes.*". Diese Regelung legt nahe, dass die Chairperson nicht über den grundlegenden Entscheidungsträger bestimmt, sondern es sich bei hier um eine rein formale Position zur Sicherung von Steuervorteilen handelt.

b.     Auch die von der Klägerin weiter in Bezug genommenen Verträge sind kein Beleg dafür, dass Herr O'Gara die grundlegenden Entscheidungen der Unternehmensführung trifft.



aa. Dies gilt zunächst für das Patent Assignment zwischen der Sonraí Memory Ltd. und der Klägerin, welches das Klagepatent nennt, und auf Seiten der Klägerin offenbar von Herrn O'Gara unterschrieben wurde (**Anlage K 38**). Auf Seiten der Übertragenden (Assignor), Sonraí Memory Ltd., hat Herr Padian das Patent Assignment unterzeichnet:

ARIGNA TECHNOLOGY LIMITED     SONRAÍ MEMORY LIMITED

(ASSIGNEE)                          (ASSIGNOR)

By: _Ciaran O'Gara._            By: _____

Name: CIARAN O'GARA       Name: Gerald Padian

Title: DIRECTOR                 Title: Director

Date: 30/06/20               Date: 03/07/20

***Abb. 2**: Ausschnitt aus Patent Assignment (Anlage K 38)*

Die grundlegendere Geschäftsentscheidung bei dieser Patentübertragung dürfte in der Entscheidung zur und Bewirkung der Patentübertragung, nicht aber in der bloßen Annahme einer Übertragungserklärung liegen. Dass Herr O'Gara diese grundlegende Entscheidung getroffen hat, hat die Klägerin nicht dargelegt, und wird auch durch dessen Unterschriftsleistung nicht nahegelegt.

bb. Ebenfalls zeugt die Unterschriftsleistung von Herrn O'Gara auf dem Lizenzvertrag mit Porsche nicht davon, dass er insoweit die grundlegende Entscheidung getroffen hat (vgl. Schriftsatz Kl., Rz. 45).

Die Klägerin führt hier aus, dass Herr O'Gara einen Lizenzvertrag unterschreibt, wenn die Klägerin einen Lizenzvertrag erfolgreich zu Ende verhandelt hat. Herr O'Gara besiegelt mit seiner Unterschrift offenbar lediglich, was bereits beschlossene Sache ist. Dass Herr O'Gara gerade die Lizenzverhandlungen führt und bestenfalls aus Sicht der Klägerin erfolgreich



abschließt, behauptet die Klägerin nämlich gerade zu Recht nicht. Denn dies fällt insbesondere in den Tätigkeitsbereich von Herrn Padian (s.o.).

cc. Ferner zeigen die Unterschriften von Herrn O'Gara auf dem Secondment Agreement (Anlage K 37), dem Letter of Engagement (Anlage K 39), den Vollmachten (Anlage K 40) und der Form of Confidentiality Obligation (Anlage K 41) auch nur, dass Herr O'Gara für die Klägerin (und alle weiteren parallelen Gesellschaften) allgemeine Verwaltungstätigkeiten verrichtet und als Ansprechpartner vor Ort fungiert. Sie liefern aber keinen Nachweis dafür, dass Herr O'Gara zum Beispiel die Geschäfte der Klägerin richtungsweisend lenkt und z.B. vorgegeben hat, die Beklagte in Deutschland zu verklagen.

c. Im Gegenteil bestätigen zwei aktuelle Geschäftsführungsakte, dass Herr Padian maßgeblich die grundlegenden Geschäftsentscheidungen der Klägerin trifft. Beispielsweise wurden durch Sonderbeschluss das Grundkapital der Klägerin durch Umwandlung von Unternehmensanteilen geändert (636.500 Ordinary Shares von jeweils USD 1,00 in 636.500 A Ordinary Shares von jeweils USD 1,00) und das Unternehmenskapital von USD 670.001,00 auf USD 67.002,00 reduziert. Diese Beschlüsse wurden von Herrn Padian, und nicht von Herrn O'Gara beim irischen Unternehmensregister eingebracht, belegt durch

- **Anlage B 21 -**.

3. **Die Gesellschafter der Klägerin**

Schließlich führen auch die Spuren der drei Gesellschafter der Klägerin, d.h. Herr Stephen McErlain, Realta Investment Ireland DAC und Croi Patent Holdings Ltd., sämtlich in die USA (vgl. Schriftsatz Kl., Rz. 21).

Ausweislich der Gesellschaftssatzung der Klägerin haben die Gesellschafter pro Unternehmensanteil (Ordinary Shares und A Shares) ein Stimmrecht. Wir überreichen die Amended Constitution der Klägerin (s. Ziff. 9.3) als



- Anlage B 22 -.

aa. Die Realta Investment Ireland DAC, die nach den Ausführungen der Klägerin Unternehmensanteile i.H.v. USD 38.501 und damit auch die meisten Stimmrechte in sich vereinen soll, ist dem Anschein nach zwar eine irische Gesellschaft. Tatsächlich aber handelt es sich bei ihr um ein mit dem US-Hedgefonds Magnetar Capital verbundenes Unternehmen. Die Muttergesellschaft der Realta Investment Ireland DAC ist die Magnetar Investments (Cayman) Limited, wobei das oberste Unternehmen die in den USA ansässige Magnetar Financial LLC ist, welche die Realta Investment Ireland DAC sowie die Magnetar Investments (Cayman) Limited verwaltet. Zum Nachweis überreichen wir den Finanzbericht zum endenden Wirtschaftsjahr 2021 zur Realta Investment DAC (s. dort S. 34) als

Anlage B 23 -.

bb. Die in Irland registrierte Croi Patent Holdings Ltd. soll Unternehmensanteile i.H.v. USD 29.517, und damit die zweithöchste Beteiligung haben. Die Croi Patent Holdings Ltd. hat acht Gesellschafter, wobei Herr Padian und Herr Tashijan mit jeweils 11.168 die meisten Unternehmensanteile hieran halten. Herr Tashijan ist ebenfalls wohnhaft in den USA. Ausweislich seines LinkedIn-Profils, das wir überreichen als

- Anlage B 24 -,

ist Herr Tashjian Managing Director der Atlantic IP Services, LLC, die die Geschäfte der Klägerin lenkt (s.o.). Die Atlantic IP Services, LLC hat ihren Sitz in den USA. Herr Padian und Herr Tashjian sind offenbar ein eingespieltes Team, schließlich führen sie gemeinsam seit über 30 Jahren die US-Kanzlei Tashjian & Padian (s. **Anlage B 24**), die sich u.a. auf die Bereiche Intellectual Property und Lizenzierung spezialisiert hat (https://www.aurigininc.com/c/Tashjian-Padian/United-States-of-America/jDoZtd).



Herr Padian und Herr Tashjian sind dabei die einzigen Gesellschafter der Croi Patent Holdings Ltd. mit Unternehmensanteilen des Typs Ordinary A und somit als einzige stimmberechtigt; nicht stimmberechtigt sind hingegen die übrigen sechs Gesellschafter mit Redeemable Unternehmensanteilen. Zum Nachweis überreichen den aus dem CRO abgerufenen Jahresbericht (Annual Return General) der Croi Patent Holdings Ltd. als

- Anlage B 25 -.

cc. Herr Stephen McErlain ist wohnhaft in den USA und soll Unternehmensanteile i.H.v. USD 8.984 und somit Stimmrechte in dieser Anzahl halten.

dd. Bei der Klägerin handelt es sich somit auch ausweislich ihrer Gesellschafterstruktur um ein Unternehmen mit Sitz in den USA. Die Klägerin wird nicht etwa in EUR, sondern in USD finanziert, und ihre Unternehmensanteile werden in USD ausgewiesen (vgl. Schriftsatz Kl., Rz. 21).

**4. Ergebnis:**

Die grundlegenden Unternehmensentscheidungen werden nicht in Irland, sondern in den USA durch Herrn Padian getroffen. Dieser ist nicht nur Managing Director der Klägerin, sondern bestimmt auch über die Gesellschaft Croi Patent Holings Ltd. die Geschäfte der Klägerin mit. Auch die weiteren Gesellschaftsstrukturen führen in die USA.

**II. Mangelnde organisatorische Verfestigung**

Schließlich weist die Klägerin auch keine hinreichende organisatorische Verfestigung aus, wie die Ausführungen in ihrem Schriftsatz belegen.

Die Klägerin hat keine Büroräume angemietet (vgl. **Anlage K 44**) und verfügt auch nicht über eigene Mitarbeiter, sondern leiht sich die Mitarbeiter der Atlantic IP Services für Dienstleistungen. Diese Infrastruktur der

Atlantic IP Services, die sich die Klägerin mit zahlreichen weiteren parallelen Gesellschaften teilt, ist darauf ausgelegt, jederzeit aufgegeben oder verlagert zu werden, so dass die Gesellschaften liquidiert werden können. Durch Ablösen des Aufklebers der Klägerin vom Briefkasten der Atlantic IP Services kann umgehend der Anschein eines angeblichen Geschäftssitzes rückgängig gemacht werden.

## B.    Anordnung einer Prozesskostensicherheit

Antragsgemäß ist daher der Klägerin gem. § 110 Abs. 1 ZPO aufzugeben, Sicherheit für die zu erwartenden Prozesskosten der Beklagten zu leisten. Der Berechnung der Sicherheit ist, wie bereits schriftsätzlich ausgeführt, ein Streitwert in Höhe von mindestens EUR 20 Millionen zugrunde zu legen.

Dr. Stefan Lieck
Rechtsanwalt
Fachanwalt für gewerblichen Rechtsschutz
*Dieser Schriftsatz wurde elektronisch signiert, § 130a ZPO.*

<u>Anlagen:</u>
Anlagen B18 bis B25

**Per beA**

Regional Court of Munich I
Prielmayerstr. 7
80335 Munich

Munich,  8. November  2022

*Parties involved receive a copy!*

**Our reference: B165094VL TMS/LST/Pta/erm**
**File reference: 44 O 403/22**

In the matter of

**Arigna Technology Ltd.**

vs.

**Bayerische Motoren Werke AG**

Intervener:
**Robert Bosch GmbH**

we adhere to our request for an ordinance for a security deposit for the costs of the proceedings and comment below on the plaintiff's submissions in this regard in its pleading dated October 27, 2022 (hereinafter: "Plaintiff's pleading").

**BARDEHLE PAGENBERG**

Prof. Dr. Tilman Müller-Stoy
mueller-stoy@bardehle.de

Anita Peter
anita.peter@bardehle.de

Prinzregentenplatz 7
81675  Munich
T +49.(0)89 928 050
F +49.(0)89 928 05 444
www.bardehle.com

BARDEHLE PAGENBERG
Partnerschaft mbB
Patent Attorneys Attorneys-
at-Law Munich District Court
Partnership Register 1152
ISO 9001 certified

In cooperation with:

XX
YUSARN AUDREY
www.yusarn.com
Singapore

| Germany | Rechtsanwälte US-Attorney-at-Law++ | | Patentanwälte* European Patent Attorneys ** | |
|---|---|---|---|---|
| BARDEHLE PAGENBERG Partnerschaft mbB Patent Attorneys and Attorneys-at-Law Prinzregentenplatz 7 81675 München info@bardehle.de VAT DE 129725745 | Johannes Heselberger** | Anita Peter | Johannes Lang */** | Humphrey Morhenn */** |
| | Claus M. Eckhartt | Sebastian Horlemann | Joachim Mader */** | Thomas Schäfer ** |
| | Tilman Müller-Stoy | Daniel Seitz | Tobias Kaufmann */** | Ingo Lummer */** |
| | Christof Karl*/**/++ | Kerstin Galler | Georg Anetsberger */** | Johannes Scholz */** |
| | Philipe Kutschke | Ronja Schregle | Niels A. Malkomes */** | Sebastian Müller */** |
| Liste der Partner i.S.d. PartGG: www.bardehle.com/de/impressum | Henning Hartwig | Claudio Reinecke | Christian Haupt*/** | Klaus Reindl */** |
| | Nadine Westermeyer | Jan Lersch | Axel Berger */** | Johannes Möller */** |
| | Pascal Böhner | Jochen Pagenberg Of Counsel | Benjamin Ruckert*/** | Maggie Huang */** |
| List of partners in accordance with the German Partnership Act (PartGG): www.bardehle.com/ imprint | Stefan Lieck | | Patrick Heckeler */** | Nikolaus Buchheim */** |
| | Jan Bösing | | Alexander Wunsch */** | Daniel Werner */** |
| | Anna Giedke | | Maria Kreller-Schober */** | Michael-Wolfgang Waschak ** |
| | Michael Kobler | | Ralf Heddergott*/** | Marius Fischer */** |
| | Christine Fluhme | | Fritz Teufel */** | Liding Zhang * |
| | Alexander von Mühlendahl | | Sorel Stan*/** | Manuel Grimm * |
| | Karin Thanbichler-Brandl | | Preston Richard ** | Udo W. Altenburg */** |
| | Dominik Woll | | Henry Selby-Lowndes ** | Of Counsel |
| BARDEHLE PAGENBERG Partnerschaft mbB Patent- und Rechtsanwälte Breite Straße 27 40213 Düsseldorf info@dus.bardehle.de VAT DE 129725745 | Rebekka Jeschke | | Martin Hohgardt */** | |
| | | | Patrick Daum */** | |
| | | | Philipp Bovenkamp */** | |

| France | Avocats | | Patent Attorneys, European Patent Attorneys | Consultants |
|---|---|---|---|---|
| BARDEHLE PAGENBERG SELAS Avocats au barreau de Paris SO Square Opéra 5 rue Boudreau 75009 Paris info@bardehle.fr VAT FR 71800645327 | Julien Fréneaux | Clément Jaffray | Marie-Claude Pellegrini | Jean-Claude Combaldieu |
| | Dominique Dupuis-Latour | Céleste Dufournier | Lionel Vial | |
| | Rebecca Delorey | Chloé Nicolas | Margaux Esselin | |
| | Axel Munier | | | |

| España | | | Patentanwälte* European Patent Attorneys** | |
|---|---|---|---|---|
| BARDEHLE PAGENBERG S.L. Avenida Diagonal 420, 1º 1ª 08037 Barcelona info@bardehle.es VAT ES B 53486429 | | | Mathieu de Rooij ** | |



**A.  Plaintiff does not have its administrative headquarters in the EU**

Contrary to the plaintiff's statements, the plaintiff's administrative headquarters, which is the decisive factor for determining the "headquarters" of legal entities pursuant to Section 110 (1) ZPO (German Act on Civil Procedure) (see also Statement of Defense (KE), p. 7 f.), is not located in Dublin, Ireland, but in the USA.

**I.  Fundamental decisions made by corporate management**

**1.  The plaintiff's directors**

The plaintiff has four directors, namely Mr. Padian and Mr. Prusko, both resident in the USA, and Mr. O'Gara and Mr. Morrison, both resident in Ireland. Mr. Morrison replaced the retired Mr. O'Sullivan on August 12, 2022. As proof of this, we submit the extract from the Irish Companies Registration Office (CRO) as

**- Exhibit B 18 -**.

aa.  Mr. Prusko is indisputably the "Senior Portfolio Manager" of the US hedge fund Magnetar Capital (see KE, p. 13).

bb.  Mr. Morrison is Senior Vice President of Maples Group https://maples.com/en/people/p/paul-morrison), which provides legal and financial services, in particular setting up complex corporate structures. Its headquarters are in the Cayman Islands (see e.g. https://en.wikipedia.org/wiki/Maples_Group).

The retired Mr. O'Sullivan, like the new Director Mr. Morrison, holds the position of Senior Vice President at the Maples Group (see e.g. https://ie.linkedin.com/in/sean-o-sullivan-77556816). Both persons are "*professional managing directors*".



**2. Management extends to the USA**

The plaintiff claims, with reference to numerous documents submitted, that Mr. O'Gara is in charge of the plaintiff's business. In reality, however, the fundamental corporate decisions are made in the USA, in particular by Mr. Padian. This is apparently intended to conceal the complex corporate structure of the plaintiff, which was created specifically for the enforcement of the patent.

a. The plaintiff's business is conducted through Atlantic IP Services, LLC, based in the USA, which is the sole shareholder of Atlantic IP Services Ltd. with which the plaintiff shares its address in Dublin.

Mr. Padian is *"Chairman and Managing Director"* of Atlantic IP Services (**Exhibit B 3**). As can be seen from his LinkedIn profile, he has extensive experience in developing new technologies, licensing patents and monetizing portfolios (**Exhibit B 4**). He carries out the monetization of portfolios by negotiating license agreements, e.g. driven by patent infringement proceedings, specifically for the plaintiff, whose sole business purpose is this.

This is a systematic approach. As Managing Director of Atlantic IP Services, Mr. Padian presides not only over the plaintiff but also the other companies founded in parallel, Solas OLED, Ltd, Data Scape, Ltd, Arís Technologies, Ltd and Neodrón Ltd (see KE, p. 10). In fact, according to the updated Atlantic IP Services website, in this role he leads (at least) nine other companies in this capacity (Aire Technology Ltd, Daingean Technologies Ltd, Foras Technologies Ltd, Lionra Technologies Ltd, Ollnova Technologies Ltd, Scramoge Technology Ltd, Sonraí Memory Ltd, Speir Technologies Ltd, and Togail Technologies Ltd). We submit an excerpt from the website of Atlantic IP Services (accessed on November 8, 2022 ) as

**- Exhibit B 19 -**



and reproduce below the updated profile of Mr. Padian:



**Gerald Padian**

**Managing Director**

Jerry Padian is the Managing Director of Atlantic IP Services. He is also a Director for Ireland based companies Solas OLED, Ltd., Data Scape, Ltd., Arís Technologies, Ltd, Neodrón Ltd., Arigna Technology Ltd., Aire Technology Ltd., Daingean Technologies Ltd., Foras Technologies Ltd., Lionra Technologies Ltd., Ollnova Technologies Ltd., Scramoge Technology Ltd., Sonraí Memory Ltd., Speir Technologies Ltd., and Togail Technologies Ltd.. Jerry has extensive experience in the development of emerging technologies, patent licensing and portfolio monetization. He co-founded Realtime Data LLC. in 1998, an inventor-owned research and development company focusing on technology in the field of data acceleration and advanced data compression. Its patent portfolio has been licensed to some of the world's leaders in computing, wireless, WAN acceleration, data streaming and financial services. Jerry is an independent investor focused on investments in digital technology companies in the United States and in Ireland.

Jerry earned a B.S. in Economics from Fordham University and a J.D. from Fordham Law School.

*Fig. 1*: Profile of Mr. Padian (***Exhibit B 19***)

These companies all share the same address and mailbox.

b.  The plaintiff argues that Mr. O'Gara is not only formally but also actually in charge of the plaintiff's business. In this regard, it refers to Sec. 160(2) Companies Act 2014, according to which a chairperson at a meeting of the Board of Directors shall have a second or casting vote in the event of an equality of votes, as well as point 8.4 of its purported Articles of Incorporation (**Exhibit K 36**).

This argument is not convincing. First of all, we would like to point out that **Exhibit K 36** is not, according to its designation, the plaintiff's Articles of Incorporation, but an "*Investment Agreement*". This was signed on behalf of the plaintiff by Mr. O'Gara, not in his capacity as (allegedly) lead director, but as a lawyer. Due to the considerable redactions in the Investment Agreement and the lack of further signature pages, it is not possible to determine between which contracting parties this Agreement was concluded and whether this agreement allows conclusions to be drawn

as to the plaintiff's actual administrative headquarters. This must therefore be denied with ignorance.

Rather, it is true that the plaintiff was founded on December 19, 2019 with the *"Constitution of Arigna Technology Limited"*, submitted as

**- Exhibit B 20 -**

,

signed by Mr. Padian as the sole shareholder at the time. The signing thereof was merely witnessed by Mr. O'Gara's signature.

The Articles of Incorporation do not provide for the office of "*Chairperson*" or double voting rights. Clause 20 of the Articles of Association merely states that the directors may elect an executive director. However, there are no documents relating to the appointment of an executive director (or chairperson) in the documents filed with the Irish Companies Registration Office for the plaintiff. In particular, there is no document that assigns such an office to Mr. O'Gara.

The Investment Agreement submitted, for which it is already unclear who the signatories are, also does not indicate that Mr. O'Gara has been assigned the alleged role of chairperson. Clause 8.4 merely states in general terms that the Chairperson of the Board shall be a person resident in Ireland (*"The Chairman of the Board shall be appointed from among the Board and shall be resident in Ireland for tax purposes."*. This provision suggests that the chairperson does not determine the fundamental decision maker, but that this is a purely formal position to secure tax advantages.

b.    The contracts further referred to by the plaintiff are also no evidence that Mr. O'Gara makes the fundamental decisions of corporate management.


aa. This applies first of all to the patent assignment between Sonraí Memory Ltd. and the plaintiff, which names the patent in suit and was apparently signed by Mr. O'Gara on the plaintiff's side (**Exhibit K 38**). On the side of the assignor, Sonraí Memory Ltd., Mr. Padian has signed the patent assignment:



*Fig. 2:Excerpt from patent assignment (Exhibit K 38 )*

The more fundamental business decision in this patent assignment is likely to be the decision to assign the patent and to effect the assignment, but not the mere acceptance of an assignment declaration. The plaintiff has not demonstrated that Mr. O'Gara made this fundamental decision, nor is it suggested by his signature.

bb. Likewise, Mr. O'Gara's signature on the license agreement with Porsche does not indicate that he made the fundamental decision in this respect (see plaintiff's pleading, margin number 45).

The plaintiff argues here that Mr. O'Gara will sign a license agreement if the plaintiff has successfully negotiated a license agreement to the end. With his signature, Mr. O'Gara is apparently merely sealing what has already been decided. The plaintiff rightly does not claim that Mr. O'Gara is conducting the license negotiations and, at best, successfully concluding them from the plaintiff's point of view. Because this falls within Mr. Padian's area of activity in particular (see above).

cc.    Furthermore, Mr. O'Gara's signatures on the Secondment Agreement (Exhibit K 37), the Letter of Engagement (Exhibit K 39), the Powers of Attorney (Exhibit K 40) and the Form of Confidentiality Obligation (Exhibit K 41) also only show that Mr. O'Gara carries out general administrative activities for the plaintiff (and all other parallel companies) and acts as a contact person on location. However, they provide no evidence that Mr. O'Gara, for example, directed the plaintiff's business and, for example, pretended to sue the defendant in Germany.

c.    On the contrary, two current management acts confirm that Mr. Padian plays a decisive role in making the plaintiff's fundamental business decisions. For example, the share capital of the plaintiff was changed by special resolution through the conversion of company shares (636,500 ordinary shares of USD 1.00 each into 636,500 A ordinary shares of USD 1.00 each) and the company capital was reduced from USD 670,001.00 to USD 67,002.00. These resolutions were lodged with the Irish Companies Registration Office by Mr. Padian, not Mr. O'Gara, as evidenced by

**- Exhibit B 21 -**.

### 3.  The plaintiff's shareholders

Finally, the tracks of the three shareholders of the plaintiff, i.e. Mr. Stephen McErlain, Realta Investment Ireland DAC and Croi Patent Holdings Ltd., all lead to the USA (see plaintiff's pleading, margin number 21).

According to the plaintiff's Articles of Incorporation, the shareholders hold one voting right per company share (ordinary shares and A shares). We submit the amended constitution of the plaintiff (see point 9.3) as

**- Exhibit B 22 -**.



aa.  Realta Investment Ireland DAC, which, according to the plaintiff's statements, is said to hold company shares in the amount of USD 38,501 and thus also most of the voting rights, appears to be an Irish company. In reality, however, it is a company affiliated with the US hedge fund Magnetar Capital. The parent company of Realta Investment Ireland DAC is Magnetar Investments (Cayman) Limited, with the ultimate company being US-based Magnetar Financial LLC, which manages Realta Investment Ireland DAC and Magnetar Investments (Cayman) Limited. As evidence, we submit the financial report on the end of the 2021 financial year for Realta Investment DAC (see p. 34) as

**Exhibit B 23 -**.

bb.  Croi Patent Holdings Ltd., which is registered in Ireland, is said to have shares in the company in the amount of USD 29,517, making it the second highest stake. Croi Patent Holdings Ltd. has eight shareholders, with Mr. Padian and Mr. Tashjian holding the most shares in the company with 11,168 each. Mr. Tashjian is also resident in the USA. According to his LinkedIn profile, which we submit as

**- Exhibit B 24 -**,

Mr. Tashjian is Managing Director of Atlantic IP Services, LLC, which manages the plaintiff's business (see above). Atlantic IP Services, LLC is based in the USA. Mr. Padian and Mr. Tashjian are obviously a well-rehearsed team, as they have jointly managed the US law firm Tashjian & Padian for over 30 years (see **Exhibit B 24**), which inter alia specializes in the areas of intellectual property and licensing (https://www.aurigininc.com/c/Tashjian-Padian/United-States-of-America/jDoZtd).



Mr. Padian and Mr. Tashjian are the only shareholders of Croi Patent Holdings Ltd. with Ordinary A type company shares and are therefore the only ones entitled to vote; the other six shareholders with redeemable company shares are not entitled to vote. As evidence, we submit the annual report (annual return general) of Croi Patent Holdings Ltd. accessed via the CRO as

**- Exhibit B 25 -**.

cc.    Mr. Stephen McErlain is resident in the USA and is said to hold company shares in the amount of USD 8,984 and therefore voting rights in this amount.

dd.    The plaintiff is therefore also a company based in the USA, as evidenced by its shareholder structure. The plaintiff is not financed in EUR, but in USD, and its company shares are reported in USD (see plaintiff's pleading, margin number 21).

**4.  Result:**

The fundamental corporate decisions are not made in Ireland, but in the USA by Mr. Padian. The latter is not only Managing Director of the plaintiff, but also co-determines the plaintiff's business via the company Croi Patent Holdings Ltd. The further corporate structures also lead to the USA.

**II   Lack of organizational consolidation**

Finally, the plaintiff also does not demonstrate sufficient organizational consolidation, as the statements in its pleading prove.

The plaintiff has not rented any office space (cf. **Exhibit K 44**) and does not have its own employees, but hires the employees of Atlantic IP Services for services. This infrastructure of Atlantic IP Services, which the plaintiff shares with numerous further parallel companies, is designed to be abandoned or relocated at any time so that the companies can be liquidated.

By removing the plaintiff's sticker from the mailbox of Atlantic IP Services, the appearance of an alleged place of business can be immediately reversed.

## B. Ordinance for a security deposit for the costs of the proceedings

In accordance with the request, the plaintiff must therefore be ordered to provide a security for the defendant's expected legal costs pursuant to Section 110 (1) ZPO. The calculation of the security is to be based on a value in dispute of at least EUR 20 million, as already stated in the pleadings.

Dr. Stefan Lieck
Attorney-at-Law
Certified IP Lawyer
*This pleading has been electronically signed, Section 130a ZPO.*

Exhibits:
Exhibits B18 to B25



# CERTIFICATE OF TRANSLATION

Questel-Orbit, Incorporated
2331 Mill Road, Suite 600
Alexandria, VA 22314, U.S.A.
www.questel.com

| | |
|---|---|
| Client Name: | **Finnegan, Henderson, Farabow, Garrett & Dunner, LLP** |
| Source Language: | **German** |
| Target Language: | **English** |
| Project Number: | **FFD2410001UT-L_Q** |
| Application: | N/A |

The document identified below was translated by Questel-Orbit, Incorporated, through its translation subsidiary MultiLing Corporation or Morningside Translations, LLC. On behalf of the translating entity, the undersign certifies the following:

1) it is a professional translation company of multiple languages, including the source and target languages noted above;

2) to the best of its knowledge, information, and belief, the translated document is accurate as a publication quality translation; and

3) the above statements were made with the knowledge that willful false statements are punishable by fine or imprisonment under Section 1001 of Title 18 of the United States Code.

Original Document Identifier: B165094VL Schriftsatz BMW vom 08_11_2022.pdf; B165094VL Interlocutory judgment dd 06.12.2023.pdf, B165094NI - Judgement dd 27_03_2023.PDF, B165094EV Judgment dd 22.12.2022.pdf
Translated Document Identifier: B165094EV Judgment dd 22.12.2022_en-US.docx, B165094NI - Judgement dd 27_03_2023_en-US.docx, B165094VL Interlocutory judgment dd 06.12.2023_en-US.docx, B165094VL Schriftsatz BMW vom 08_11_2022_en-US.docx

Signed this _16th_ day of __February__ 2024.


*Miriam Grover*

Name: Miriam Grover
Title: Project Manager